# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CHARLES E. COOK, | ) | |
| | ) | **Case No. 3:07-0637** |
| Plaintiff, | ) | **Judge Trauger** |
| | ) | |
| v. | ) | |
| | ) | |
| PETE GEREN, ACTING SECRETARY OF | ) | |
| THE ARMY | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM

The defendants have filed a Motion to Dismiss and for Summary Judgment (Docket No.

13), to which the plaintiff has responded (Docket No. 25), and the defendant has replied (Docket

No. 27). For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

---

[1]As is discussed further below, it is the court's task, in reviewing the plaintiff's
discrimination claims, to examine those claims *de novo*. However, all other claims are to be
examined on the record compiled by the United States Merit Systems Protection Board
("MSPB"), the determinations of which are to be set aside only if those determinations are "(1)
arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; (2)
obtained without procedures required by law, rule, or regulation having been followed; or (3)
unsupported by substantial evidence." 5 U.S.C. § 7703. This presents a challenge in compiling
a single factual background in this case. In analyzing the discrimination claims, with regard to
which the defendant has filed a motion to dismiss, the facts must be drawn from the plaintiff's
Complaint (Docket No. 1), in accordance with the court's task on a motion to dismiss to
determine whether "[t]he factual allegations, assumed to be true . . . show *entitlement* to relief."
*League of United Latin Am. Citizens v. Bredesen*, No. 03-5306, 2007 U.S. App. LEXIS 20556, at
*6 (6th Cir. Aug. 28, 2007). The remaining claims, however, must be reviewed on the record
compiled by the MSPB. Fortunately, the plaintiff's discrimination claims, which must be
dismissed as a matter of law, do not present the court with any factual issues. Unless otherwise
noted, the facts in this section will be drawn from the Complaint (Docket No. 1); to the extent
that the record compiled by the MSPB materially differs from those allegations, the court will
note this discrepancy. Further, in analyzing the claims for which the *de novo* standard of review

1

Plaintiff Charles Cook has been employed with the Army for over seventeen years as a helicopter flight simulator training instructor. Mr. Cook alleges that he was wrongfully removed from his position in retaliation for prior Title VII complaints and for whistle-blowing, and also that he was discriminated against on the basis of race and sex. In March 2005, the plaintiff received a Notice of Proposed Removal prepared by Colonel Dominick Caracillo (who was at the time a Lieutenant Colonel). The basis for his proposed removal was an EEO complaint filed by a co-worker, alleging that the plaintiff (who is Caucasian) had uttered the word "nigger" in her presence approximately five months earlier, in December 2004. During the administrative process Mr. Cook admitted to using the term but alleged that he had used it in a permissible context. (Docket No. 14, Ex. 7 at p. 12-13) Specifically, Mr. Cook alleged that, when he used the term, he was merely quoting its prior use by a police officer in a Clarksville, Tennessee, Human Relations Commission case with which he was familiar. (*Id*.) The plaintiff currently alleges that, at the time of his removal, the complaint against him regarding the use of this term had not been fully investigated or processed.

In June 2005, the plaintiff submitted a written and oral defense to the proposed removal, alleging that he had been denied due process and that several documents Col. Caracillo had consulted in issuing the removal were inaccurate, non-disciplinary, and should have been removed from his file. In addition, the plaintiff alleged that his dismissal constituted retaliation for protected Title VII and whistle-blowing activities. The plaintiff also alleged that his dismissal constituted race and sex discrimination because another employee, a black female, had used the term "nigger" and not been fired. The plaintiff believed his dismissal to be the result of

does not apply, the court will refer only to the facts in the MSPB record.

a conspiracy of several co-workers who resented his protected activities.

During this time the plaintiff informed several of his superiors that his black female coworker had used the term "nigger" and yet gone unpunished. These superiors did not discipline this coworker, and did not take up the plaintiff's cause to be reinstated.

The plaintiff was removed from the federal service on August 28, 2005. Soon afterwards, the plaintiff filed a "mixed-case" appeal of his removal with the MSPB, alleging harmful procedural error, denial of due process, employment discrimination based on race and gender, and retaliation for engaging in activities protected by Title VII and the Whistleblower Protection Act. During this initial appeal the plaintiff appears to have dropped his Title VII disparate treatment claim. (Docket No. 14, Ex. 9 at p. 4-5)

On April 28, 2006, the MSPB issued an initial decision in which, the plaintiff alleges, he was "sustained on all counts and affirmative defenses." In that decision, Administrative Judge Miksa found that the plaintiff's removal could not be upheld for several reasons. First, the plaintiff's official disciplinary file had contained documentation of events that were not disciplinary in nature and did not reflect that various suspensions the plaintiff had incurred had been reduced. (Docket No. 14, Ex. 7 at p. 2-3) Next, the agency had not established the factual basis for its charge by a preponderance of the evidence. (*Id*. at p. 4) In addition, Administrative Judge Miksa found that the plaintiff had proved his affirmative defenses of harmful error, Title VII retaliation, and retaliation in violation of the Whistleblower Protection Act. (*Id*. at p. 33-34) There was no ruling as to the Title VII disparate treatment claim, which appears not to have been pursued past the initial filing of the appeal. The plaintiff's removal was "cancelled" and the plaintiff was retroactively reinstated to his position with back pay. (*Id*. at p. 34) No

consequential or compensatory damages were awarded; however Administrative Judge Miksa held that a motion for initiation of another proceeding to determine such damages could be filed within 60 days. (*Id*. at p. 36)

The defendant filed a petition for review on May 30, 2006, and, on March 19, 2007, a new decision was issued by an appellate panel of the MSPB, affirming the initial decision in part and reversing it in part. The plaintiff alleges that, "although the final decision discussed the discrimination and EEO reprisal activities and denial of due process in the EEO complaint process, it failed to provide any rationale or basis for reversing those initial findings." (Complaint, Docket No. 1 at p. 3). In fact, the March 19, 2007 Opinion and Order did provide a factual and legal basis for its reversal. (*See* Docket No. 14, Ex. 11) In that decision, after declining to reopen the record for consideration of the agency's new evidence, the MSPB panel held that the administrative judge had correctly determined that the agency had not proven its charge against the plaintiff. (*Id*. at p. 8-9) Accordingly, that part of the original decision was affirmed. (*Id*. at p. 9) Because a finding of harmful procedural error could not afford the plaintiff with any additional relief, the panel declined to analyze that claim, vacating the administrative judge's finding in favor of the claim. (*Id*. at p. 9)

Next, the MSPB panel addressed the plaintiff's Title VII and Whistleblower Protection Act claims, finding "[w]e are not persuaded that the appellant has established that the decision to remove him constituted reprisal for any protected activities." (*Id*. at p. 11) The panel based its decision on an apparent lack of motive on the part of Col. Caracillo to retaliate against the plaintiff, since none of the alleged protected activity had involved Col. Caracillo. (*Id*. at p. 11-14) In addition, the panel noted that Col. Carcillo's finding that the plaintiff had been "hostile in

4

the workplace" most likely referred to the plaintiff's extensive disciplinary record. (*Id*. at p. 12)

The MSPB panel affirmed the administrative judge's "cancellation" of the plaintiff's removal

and the plaintiff's retroactive reinstatement with back pay. (*Id*. at p. 14)  However, the panel did

not indicate that any additional damages could be had.  The plaintiff alleges that, as a result of

this decision, he was "denied any compensatory damages and investigation by the Office of

Special Counsel without explanation." (Complaint, Docket No. 1 at p. 3)

Accordingly, the plaintiff filed a Petition for Review of the MSPB final decision with the

Equal Employment Opportunity Commission ("EEOC"), appealing the MSPB panel's reversal

of the Title VII and Whistleblower retaliation claims.  On May 17, 2007, the EEOC issued a

decision concurring in the MSPB panel's findings.  The EEOC found that "the MSPB's decision

constitutes a correct interpretation of the laws, rules, regulations, and policies governing this

matter and is supported by the evidence in the record as a whole." (Docket No. 14, Ex. 12 at p.

2)

On June 13, 2007, the plaintiff filed this action, alleging (1) disparate treatment on the

basis of sex and race and retaliation for protected activities in violation of Title VII, (2)

violations of the Privacy Act, and (3) violations of the Whistleblower Protection Act.

(Complaint, Docket No. 1.)  On September 11, 2007, the defendant filed a motion to dismiss and

for summary judgment.  (Docket No. 13)

## ANALYSIS

### I.      Motion to Dismiss Standard

The defendant has moved to dismiss the plaintiff's claims under Title VII and the Privacy

Act.  In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court

will accept as true the facts as the plaintiff has pleaded them. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *Performance Contracting, Inc. v. Seaboard Sur. Co.*, 163 F.3d 366, 369 (6th Cir. 1998). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, No. 03-5306, 2007 U.S. App. LEXIS 20556, at *6 (6th Cir. Aug. 28, 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by conclusory assertions. *Twombly*, 127 S.Ct. at 1965 n.3.

6

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely"). With this standard in mind, the court turns to an analysis of the plaintiff's claims under Title VII and the Privacy Act.

## II.      The Plaintiff's Title VII Claims

The plaintiff alleges retaliation and disparate treatment discrimination based on race and sex under Title VII. Because partial review of administrative decisions is not available for federal employees pursuing Title VII claims, that claim must be dismissed. The plaintiff's disparate treatment claim must also be dismissed because he failed to exhaust his administrative remedies as to that claim.

### A.      "Partial Review" of the Plaintiff's Retaliation Claim

Under Title VII's federal-sector administrative process, a complainant has the choice to pursue two different types of civil actions following the exhaustion of administrative remedies.

7

*See Scott v. Johanns*, 409 F.3d 466, 199 (D.C. Cir. 2005). Under the first option, "complainants who prevail in the administrative process but who—for whatever reason—fail to receive their promised remedy, may sue to enforce the final administrative disposition." *Id*.; *see also Wilson v. Pena*, 79 F.3d 154 (D.C. Cir. 1996). Under the second option, "a complainant 'aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action' under Title VII," in which "the district court considers the discrimination claim de novo." *De novo* review, under this second option, is "[a] new trial on the *entire* case—that is, on both questions of fact and issues of law—as if there had been no trial in the first instance." *Timmons v. White*, 314 F.3d 1229, 1233 (11th Cir. 2003) (quoting Black's Law Dictionary, (7th Ed. West 1999). This review is "unfettered by any prejudice from the [prior] agency proceeding and free from any claim that the [agency's] determination is supported by substantial evidence." *Id*. (quoting *United States v. Raddatz*. 447 U.S. 667, 690 (1980) (Stewart, J., dissenting)); *see also Morris v. Rumsfeld*, 420 F.3d 287, 294 (3d Cir. 2005) (in *de novo* review, the court is "not bound by the results of the administrative process, whether that process culminated in one administrative decision, or in two or more decisions").

There is no third option. In the Sixth Circuit, and in the great majority of federal circuits, a plaintiff my either enforce his administrative remedy or obtain *de novo* review of his administrative action in its entirety, and there is no avenue for a partial *de novo* review of the administrative decision. *Id*. ("Under Title VII, federal employees who secure a final administrative disposition finding discrimination and ordering relief have a choice: they may either accept the disposition and its award, or file a civil action, trying de novo both liability and remedy."); *see also Haskins v. United States Dept. of the Army*, 808 F.2d 1192, 1200 n. 4 (6th

8

Cir. 1987) (identifying the exclusive option for federal employees to (1) "go into federal courts to enforce" the administrative order or (2) obtain "a de novo hearing" in which "the district court is not bound by the administrative findings"); *Massingill v. Nicholson*, 496 F.3d 382, 384 (holding that a federal complainant "cannot seek partial *de novo* review"); *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005) (refusing to permit "fragmentary *de novo* review"); *Morris*, 420 F.3d at 292-93 (rejecting limited *de novo* review).[2]

It is clear that the plaintiff is not seeking to enforce his administrative decision in its entirety and, instead, seeks at least partial review of his Title VII retaliation claim as well as other claims. The other possibility would be for the plaintiff to seek *de novo* review of the administrative record. In that case, the court could proceed to the merits of his Title VII retaliation claim. *See Massingill*, 496 F.3d at 386 ("Having reviewed the complaint with an eye towards our liberal notice pleading standards, we conclude that Massingill requested a complete trial."). However, in his response brief, the plaintiff put this issue to rest by stating that, "[s]hould the court view these claims as appeals of the prior agencies' final decisions and requires [sic] a de novo action of the <u>entire mixed case</u>, then Plaintiff respectfully declines to proceed on such claims if doing so would require Plaintiff to forfeit his reinstatement and back pay as he has already received." (Docket No. 26 at p. 15) (emphasis in original). The plaintiff pursues that which he cannot have: a partial *de novo* review of the administrative decision. *See*

---

[2]The Ninth Circuit, to the contrary, has permitted federal employees to challenge administrative decisions in Title VII cases via partial *de novo* review. *See Arnold v. United States*, 816 F.2d 1306, 1310 (9th Cir. 1987) ("Arnold has legitimately chose to appeal the portion of the Rozzi Decision denying that the settlement was breached, to request rescission of the settlement agreement, and to enforce her original claims.") However, Sixth Circuit authority, and the weight of authority on this issue from other circuits, cited above, commands the opposite conclusion.

9

*Timmons*, 314 F.3d at 1234 (in a *de novo* hearing "the district court is not bound by the administrative findings") (emphasis in original).  Accordingly, the plaintiff's claim for retaliation under Title VII must be dismissed.

**B.** **Whether the Plaintiff Exhausted his Disparate Treatment Claim**

A plaintiff "seeking to bring a discrimination claim under Title VII in federal court must first exhaust her administrative remedies."  *Randolph v. Ohio Dept. Of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976)); *see also McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) ("In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations'") (quoting *Brown*, 425 U.S. at 833)).  This may be achieved in one of three ways: "[t]he aggrieved employee may file a direct appeal of the adverse action to the MSPB . . ., file a grievance under his or her union's negotiated grievance procedure, or file a formal complaint with the EEOC."  *Redmon v. Mineta*, No. 06-5272, 2007 WL 1837134 at *1 (6th Cir. Jun. 25, 2007).

If a plaintiff identifies a cause of action in an early filing but subsequently abandons that cause of action during the administrative process, he has not exhausted his administrative remedies with respect to that claim.  *See Moorer v. Price*, 83 Fed. Appx. 770, 771 (6th Cir. 2003) ("The prisoner cannot abandon the process before completion and argue that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations.") (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (holding that the plaintiff "was required to continue to the next step in the grievance process" in order to exhaust

10

his administrative remedies)); *see also McAdams v. Reno*, 64 F.3d 1137, 1142 (8th Cir. 1995) (having "abandoned her Title VII claims before the MSPB," the plaintiff could not "assert them in a separate civil action"); *Sanchez v. Caldera*, No. 5:00-CV-123, 2001 WL 1699206 at *4 (W.D. Mich. 2001), *aff'd* 36 Fed. Appx. 844 (6th Cir. 2002) ("When a claimant abandons her race discrimination claim before the MSPB, she is foreclosed from asserting it in a civil action.")

The plaintiff elected to file his appeal of his adverse action to the MSPB. In his initial statement of facts and issues filed with the MSPB on February 23, 2006, the plaintiff identified "[w]hether the Agency has discriminated against Appellant on basis of race and gender" along with his Title VII retaliation claim, as an issue in his case. (Docket No. 14, Ex. 8 at p. 17) However, from that point until the plaintiff sought to review the subsequent MSPB appellate panel's decision, neither the plaintiff nor any other party to the MSPB grievance process made any note of the plaintiff's disparate treatment discrimination claim.

On March 6, 2006 Administrative Judge Miksa filed a Summary of Telephonic Prehearing Conference, in which he identified the remaining issues in the case. (*Id.*, Ex. 8) Although Judge Miksa identified a Title VII retaliation and Whistleblower claim, he made no mention of a Title VII disparate treatment claim. (*Id.*, Ex. 8 at p. 7-8) Two days later, on March 8, 2006, at the start of the administrative hearing, Administrative Judge Miksa referred to his March 6 Summary, stating that, "[d]uring preliminary conferences," he "asked the parties if they[] received my March 6th, 2006 summary of telephonic pre-hearing conference," and that the parties "indicated they had" and that "they have no disagreement with the content of that order." (*Id.* at p. 4-5) The plaintiff's counsel responded, "Correct, sir. Yes, that's correct." (*Id.* at p. 5). Administrative Judge Miksa further prompted the plaintiff's counsel, "Essentially this

11

means then that I've reflected all of the affirmative defenses the appellant is raising . . . ?", to which plaintiff's counsel replied, "Yes, your honor." (*Id.*) Finally, Administrative Judge Miksa stated, "And . . . there are no others, is that correct . . . ?", to which plaintiff's counsel replied, "none others . . . no others." (*Id.*) Accordingly it should not be surprising to the plaintiff that Administrative Judge Miksa did not rule on any Title VII disparate treatment claims.[3]

The court finds that the plaintiff abandoned his disparate treatment claim at the administrative level. Accordingly, he did not exhaust his administrative remedies as to that claim and it must be dismissed. In addition, the court notes that, even if the plaintiff had exhausted his administrative remedies on his Title VII disparate treatment claim, he would not be able to obtain a partial review of the administrative findings on that claim, but instead could only obtain a *de novo* review, under which the entirety of the administrative case would be open for scrutiny. *Haskins*, 808 F.2d at 1200 n. 4. Because the plaintiff has indicated that he does not want such a review, his disparate treatment claim is also dismissed on that ground.

## IV.     Whether the CSRA Bars the Plaintiff's Privacy Act Claims

The Civil Service Reform Act ("CSRA") delineates the remedial scheme under which federal employees can challenge "prohibited personnel practices."  5 U.S.C. § 2302. Accordingly, if a plaintiff's cause of action falls within the scope of "prohibited personnel

---

[3]In his Petition for Review of EEO/Title VII Issues From Final MSBP Decision, the plaintiff did assert, as error, that "The Board's final decision as to EEO claims of retaliation and/or discrimination based on race (white) and gender (male) were addressed only to the extent of the deciding official's actions and/or omissions in deciding to remove appellant."  (Docket No. 26, Ex. 1 at ¶ 7)  However, this was the first time since his original MSPB appeal that the plaintiff made mention of a Title VII disparate treatment claim, as opposed to a Title VII retaliation claim, and neither the decision to which he referred nor the subsequent EEOC decision made any reference to such a claim.

practices," the CSRA's administrative procedures are the only remedy, and the plaintiff may not obtain relief in federal courts for that cause of action. *See Orsay v. United States Department of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002) ("If the conduct that Appellants challenge in this action falls within the scope of the CSRA's 'prohibited personnel practices,' then the CSRA's administrative procedures are Appellants' only remedy, and the federal courts cannot resolve Appellants' claims."); *United States v. Fausto*, 484 U.S. 389, 448 (1988) (holding that the right to judicial review of determinations of the MSPB is limited to the terms of the CSRA); *Wills v. Office of Personnel Management*, 16 F.3d 414, 1994 WL 22349 at *2 (4th Cir. 1994) (Table) ("Both the United States Supreme Court and this Court have held that the CSRA is the vehicle through which federal employees may challenge adverse employment actions.") (citing *Lindhal v. Office of Personnel Management*, 470 U.S. 768, 784-85 (1985)); *McAuliffe v. Rice*, 966 F.2d 979, 981 (5th Cir. 1992) (CSRA furnishes the exclusive set of remedies available to federal employees of all types).

The Privacy Act creates causes of action under the following situations:

(g)(1) Civil remedies.--Whenever any agency

(A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

(B) refuses to comply with an individual request under subsection (d)(1) of this section;

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an

13

individual,

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C.A. § 552a[4].  It is well established that the causes of action created by the Privacy Act fall under the rubric of the CSRA's "prohibited personnel practices." *See Orsay*, 289 F.3d at 1130 ("Because Appellants' Privacy Act claims are in fact complaints about 'prohibited personnel practices' under the CSRA, we hold that the CSRA precludes consideration of the claims."); *Phillips v. Widnall*, 110 F.3d 74 (Table) ("Where the Civil Service Reform Act . . . precludes review of a personnel decision, the Privacy Act does not vest the court with jurisdiction to conduct such a review."); *see also Lee v. Geren*, 480 F. Supp. 2d 198, 206 (D. D.C. 2007) ("[T]he court agrees that plaintiff should not be allowed to use the Privacy Act as an 'end-run' around the CSRA."); *Finnerty v. United States Postal Service*, No. Civ. 03-558 (HAA), 2006 WL 54345 at *9 (D. N.J. 2006) ("[C]ollateral attacks to adverse employment determinations brought under the auspices of the Privacy Act are preempted by the comprehensive scheme governing employee relations prescribed by the Civil Service Reform Act.").

Accordingly, where a federal employee has previously brought claims for "prohibited

---

[4]The plaintiff has informed the court that, in addition, "[t]he Privacy Act further provides for criminal penalties for willful violations and classified [sic] certain actions as misdemeanor and establishes appropriate penalties to be imposed by the <u>federal district court</u> in which the action is brought."  (Docket No. 26 at p. 7) (emphasis in original).  Criminal sanctions are not, however, available in this civil action.  *See Unt v. Aerospace Corp.*, 765 F.2d 1440, 1448 (9th Cir. 1985)("This section provides for criminal penalties only, and generates no civil right of action."); *Federal Labor Relations Authority v. U.S. Dept. of Defense*, 977 F.2d 545, 549 n. 6 (11th Cir. 1992) ("As a penal provision, however, this section seems to provide no private right of action.")

14

personnel practices" before the MSPB, the Privacy Act may not be used as a vehicle to re-litigate those claims. *See Wills*, 16 F.3d 414, 1994 WL 22349 at *2 (4th Cir. 1994) (Table) ("An employee may not collaterally attack an adverse employment decision under the guise of a Privacy Act suit."); *Kleiman v. Dep't of Energy*, 956 F.2d 335, 338 (D.C. Cir. 1992) ("This court has refused to allow the exhaustive remedial scheme of the CSRA to be impermissibly frustrated by granting litigants, under the aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially unreviewable under the CSRA.") (internal citations omitted); *Henderson v. Social Security Administration*, 908 F.2d 559, 560-61 (10th Cir. 1990) ("We agree with the district court that the Privacy Act does not vest the court with jurisdiction to review personnel decisions where the Civil Service Act precludes such review.").

The plaintiff's Privacy Act causes of action appear to be an attempt to re-litigate his claim, asserted in his MSPB hearing, that he was wrongfully terminated due to improperly maintained, false records, alleging that, "[b]ut for the multiple Privacy Act violations by Defendant's agents/employees, the related discrimination and denial of his due process civil rights; [sic] the Plaintiff would not have suffered the harm he did." (Docket No. 26 at p. 10) Plainly, the plaintiff is challenging "prohibited personnel practices" under the aegis of the Privacy Act. The MSPB ruled on these "prohibited personnel practices," finding that certain of the records considered by the defendant should not have been considered because they were not expressly disciplinary. Although the plaintiff was reinstated with back-pay, he was not ultimately awarded the full damages he now requests. The plaintiff cannot collaterally assault that determination in the federal courts. The plaintiff's Privacy Act claims plainly fall within the CSRA's prohibition. Accordingly, those claims must be dismissed.

15

## V.       Summary Judgment Standard in the Context of the Whistleblower Protection Act Claim

The defendant has moved for summary judgement on the plaintiff's Whistleblower Protection Act Claim. Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). And we must

16

keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

Although the defendant has brought his challenge to the plaintiff's claim under the Whistleblower Protection Act as a motion for summary judgment, the court is not working on a blank canvas in analyzing this claim. Instead, the court must examine the merits of the claim in light of the MSPB's decision. Under the CSRA, discrimination claims previously brought before the MSPB are "subject to trial de novo by the reviewing court." 5 U.S.C. § 7703(c). However, the *de novo* standard of review for Title VII claims is an exception to the general rule, applied to all other claims, that MSPB determinations are reviewed on the record and "set aside only if the 'agency action, finding or conclusion' is found to be '(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'" *Kelliher v. Veneman*, 313 F.3d 1270, 1274 (11th Cir. 2002) (citing 5 U.S.C. § 7703(c)); *see also Carr v. Reno*, 23 F.3d 525, 528 (D.C. Cir. 1994) ("We may consider only the administrative record, and we may reverse only if the MSPB's decision was arbitrary, capricious, or an abuse of

17

discretion."); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 274-75 (applying the "arbitrary and capricious" standard to a Whistleblower Protection Act claim); *Connor v. United States Civil Service Commission*, 721 F.2d 1054, 1057 (applying the "arbitrary and capricious" standard to a challenge of removal).

Accordingly, the court must review the MSPB's determination in favor of the defendant on the Whistleblower Protection Act claim on the administrative record, "only to ensure that the determination is (1) not arbitrary or capricious, (2) made without regard to law, or (3) not based on substantial evidence." *Kelliher*, 313 F.3d at 1276 (citing *Carr*, 23 F.3d at 528). With this standard in mind, the court turns to an analysis of the plaintiff's claim.[5]

## VI.   Review of the MSPB's Determination of the Plaintiff's Whistleblower Protection Act Claim

In order to succeed on his claim for retaliation for disclosure of information under the Whistleblower Protection Act, the plaintiff must show that "(1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a disclosure protected under section 2302(b)(8); (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; (4) the acting official

---

[5]In his response memorandum, the plaintiff states that his "whistle-blower claims against Van Bruggen, Purdom, and Jenkins, Robinson, his supervisors, are presented to this Honorable Court de novo, not as an appeal of the MSPB or EEOC's final decision." (Docket No. 26 at p. 15). What, exactly, this language means is a bit puzzling. If the plaintiff means to bring claims before this court that were not before the MSPB, then he is barred from doing so by his failure to exhaust the administrative remedies for those claims. To the extent that any such claims were brought before the MSPB, they can only be reviewed under the standard set forth in the CSRA. At any rate, none of these individuals, (Ms. Van Bruggen, Ms. Robinson, Mr. Prudom, or Mr. Jenkins) was the acting official who terminated the plaintiff or recommended his termination. Accordingly, none of them can be held liable under the Whistleblower Protection Act. *See* 5 U.S.C. § 2302(b)(8).

took, or failed to take, the personnel action against the employee because of the protected disclosure." *Eidmann v. Merit Systems Protection Bd.*, 976 F.2d 1400, 1407 (Fed. Cir. 1992) (citing 5 U.S.C. § 2302(b)(8)). In addition, a plaintiff may recover for exercising "an appeal, complaint, or grievance right" under § 2302(b)(9), under the same framework outlined above, "but 'only if [the plaintiff] establish[es] the type of fraud, waste, or abuse that the WPA was intended to reach." *Fields v. Department of Justice*, 452 F.3d 1297, 1303 (Fed. Cir. 2006) (quoting *Ellison v. Merit Systems Protection Bd.*, 7 F.3d 1031, 1035 (Fed. Cir. 1993)).

The MSPB found that the plaintiff had failed to establish that any disclosures protected by § 2302(b)(8) "were a contributing factor in his removal" or that his "removal was in retaliation for any activities protected under" § 2302(b)(9). (Docket No. 14, Ex. 11 at ¶ 29) The MSPB's finding was not arbitrary or capricious, or made without regard to law, and it was based on substantial evidence. The MSPB reasoned that "the deciding official," Col. Caracillo, "appears to have no motive to retaliate against the appellant for his complaints or grievances." (*Id.* at ¶ 24). This is because, "[n]ot only do we see nothing in the record indicating that he was responsible for any matters at issue in the OSHA complaints, but that official did not even assume his position until more than [three and one-half] years after November 2000, the date of the most recent OSHA complaint activity to which the [plaintiff] has referred." (*Id.*)

Next the MSPB found that "the [plaintiff] has identified only one discrimination complaint in connection with his reprisal claims; and, although that complaint was filed in connection with his reprisal claims; and, although that complaint was filed in October 2003, a few months after the deciding official took office," it concerned an EEO Office Employee, and "[n]othing in the record" suggested that Col. Caracillo was implicated in the complaint. (*Id.*)

19

The MSPB next addressed the statement made by Col. Caracillo that the plaintiff had been "hostile in the workplace," explaining that there was no reason to believe that this hostility was meant to include protected whistleblower activity. (*Id*. at ¶ 25-26) Instead, the more likely interpretation was that Col. Caracillo "was referring to the [plaintiff's] prior record of disciplinary actions and letters of counseling and instruction." This disciplinary record was cited extensively by the MSPB. (*Id*. at ¶ 27-28)

All of this analysis goes to the fourth element required to demonstrate a Whistleblower Protection Act claim, that "the acting official took, or failed to take, the personnel action against the employee *because of* the protected disclosure;" or, in other words, the element of causation. 5 U.S.C. § 2302(b)(8). There was nothing arbitrary or capricious in this analysis. Neither can it be said to have been performed without regard to law; in fact, as shown above, the MSPB demonstrated that the plaintiff could not prove the fourth element of his claim. Finally, as shown above, the MSPB's finding was based on substantial evidence. Accordingly, the MSPB's determination cannot be reversed. Summary judgment will be granted on the plaintiff's Whistleblower Protection Act claim.

20

## **CONCLUSION**

For the reasons stated herein, the defendant's Motion to Dismiss and for Summary Judgment will be granted.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge